IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR SWANSON | ) | CASE NO. 1:04 CV 618 |
| | ) | |
| Plaintiff, | ) | JUDGE PAUL R. MATIA |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MARGARET BRADSHAW, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

Plaintiff, Arthur Swanson, a prisoner incarcerated in Mansfield Correctional Institution ("MANCI"), filed a complaint against Margaret Bradshaw, Warden of MANCI, Mary Minor, Mailroom Supervisor at MANCI, and Cris Nash, Cashier at MANCI, on March 31, 2004. Plaintiff alleged Defendants actions denied him due process and violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and 42 U.S.C. §§1983, 1985, and 1986. Plaintiff also had three claims arising under state law, intentional infliction of emotional distress, abuse of process, and violation of Ohio's Constitution, and one claim for "misuse of United States Mail" in violation of "39 U.S.C.." On June 9, 2004, however, Judge Paul R. Matia dismissed Plaintiff's 42 U.S.C. §§1985 and 1986, and "misuse of United States Mail" claims against all Defendants, and Plaintiff's 42 U.S.C. §1983 claim against Defendant Bradshaw. Thus, the only remaining claims still at issue are the 42 U.S.C. §1983 claims against Defendants Minor and Nash and the state law claims against all Defendants.

On March 30, 2004, Defendants filed a Motion for Summary Judgment seeking judgment as a matter of law as to all of Plaintiff's claims. They argue summary judgment is warranted because Plaintiff cannot prove they violated his constitutional right of access to courts nor that he suffered any actual injury.

Defendants further argue Plaintiff cannot meet the required elements of his state law claims. Plaintiff, to the contrary, alleges a genuine issue of material fact exists and, as a result, grant of summary judgment at this stage would be improper.

For the following reasons, the Magistrate Judge recommends *Defendants' Motion for Summary Judgment* be GRANTED in part and DENIED in part.

## I. FACTS

Plaintiff alleges he placed his appeal of his conviction to the Ohio Supreme Court in the prison mail on February 12, 2003. On February 25, 2003, however, Plaintiff received a letter from that Court indicating he did not perfect his appeal because he failed to file it within the required forty-five day time period (*i.e.*, by February 17, 2003). (*Plaintiff's Complaint*, Exhibit 1). According to Plaintiff, also enclosed with that letter was a copy of his appeal, time-stamped February 21, 2003 by the Supreme Court. Plaintiff eventually filed a grievance with the prison dated March 3, 2003 against Defendants alleging his legal mail was wrongfully delayed. (*Plaintiff's Complaint*, Exhibit 2, p. 1).

Through the grievance process, Defendants explained Plaintiff's legal mail was not sent on February 12, 2003 because he had insufficient funds in his account to cover the $3.85 postage cost. Specifically, they stated the hold in the amount of $18.52 that was placed on Plaintiff's account on February 6, 2003 for a court ordered payment, along with a withdrawal for copy fees on February 11, 2003, resulted in a balance of only $3.25 in his account, which was $0.60 less than the required postage for Plaintiff's legal mail. (*Defendants' Memorandum in Support of Motion for Summary Judgment*, Exhibits C-1 - C-3;

*Plaintiff's Complaint*, Exhibit 1).[1] According to Defendants, Plaintiff's legal mail was sent out on March 7, 2003, when Plaintiff's account balance could cover the cost of postage. (Defendants' Exhibit C-1, C-4).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Non-moving parties cannot simply rest upon the allegations of their pleadings or general allegations in establishing that issues of fact may exist. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). The Supreme Court has held that, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new

---

[1] Exhibits from *Defendants' Memorandum in Support of Motion for Summary Judgment*, shall henceforth be referred to as "Defendants' Exhibit ___."

era" of favorable regard for summary judgment motions. *Street* points out the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. 886 F.2d at 1479. This burden may be met by pointing out to the court the non-movant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id.*

In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The Court must also determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). In reaching such a determination, however, the Court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49.

### III. ANALYSIS

#### A. Issues of Fact

Upon review of the record by the Court, it is clear there is pervading uncertainty surrounding two central facts in this case – the actual date Plaintiff's appeal was mailed and the reason behind the delay in mailing Plaintiff's appeal. Indeed, contrary to the recitation of facts offered by Defendants, much of the record suggests Plaintiff's appeal was not mailed on March 7, 2003 as alleged, thus bringing the reason for the delay in mailing the appeal into question, as well.

Plaintiff alleges he provided Defendants with his legal papers for mailing to the Ohio Supreme Court on February 12, 2003 and Defendants do not dispute this assertion. Defendants claim, however, that at the time the papers were submitted for mailing, a hold in the amount of $18.52 had already been placed

on Plaintiff's account (on February 6, 2003) to satisfy a court ordered payment. Although this act was fully within Defendants' rights under Ohio law, Plaintiff's account summary did not show any such hold. *See* Ohio Rev. Code §5120.133; Ohio Admin. Code 5120-5-03. Furthermore, despite the fact Defendants have offered a separate document to indicate the application of the hold on February 6, 2003, Plaintiff's account shows the $18.52 was not actually removed from the account until February 20, 2003, thus leaving a balance of only $3.25.

According to Defendants, postage for Plaintiff's legal mail was $3.85, $0.60 less than that in Plaintiff's account. They claim it was this deficiency that caused them to delay until March 7, 2003 to mail Plaintiff's appeal to the Supreme Court. However, Plaintiff has offered a letter from the Ohio Supreme Court dated February 25, 2003 rejecting his appeal as untimely. According to Plaintiff, also enclosed with that letter from the Supreme Court was a copy of his appeal time-stamped February 21, 2003. Both documents indicate Plaintiff's appeal to the Supreme Court was mailed before March 7, 2003, the date alleged by Defendants. Additionally, Plaintiff's initial grievance regarding this issue was dated March 3, 2003, four days before the date Defendants assert the appeal was mailed. Judging from the above, it seems physically impossible for Plaintiff's legal mail to have been sent any time in March 2003.[2]

The logical inference that Plaintiff's legal mail was mailed in February rather than March suggests the reason offered by Defendants for the delay in sending Plaintiff's mail, insufficient funds, is at worst false

---

[2] Defendants have offered a handwritten document indicating Plaintiff's mail to the Ohio Supreme Court was mailed on March 7, 2003. Plaintiff's account record also indicates that $3.85 was taken from Plaintiff's account for postage on March 6, 2003. They, however, have not sought to reconcile these records with the documents offered by Plaintiff showing the Supreme Court of Ohio received his appeal before March 7, 2003.

and at best misconceived. As stated above, Plaintiff received a letter from the Supreme Court dated February 25, 2003 rejecting his request for appeal, and the $18.52 for the court ordered payment was taken out February 20, 2003, thus leaving insufficient funds for postage following that date. These two facts clearly suggest Plaintiff's appeal was mailed to the Supreme Court on or before February 20, 2003, when Plaintiff presumably had sufficient funds in his account to mail his appeal. This conclusion completely undermines Defendants' explanation for the delay in mailing Plaintiff's appeal as the fact that Plaintiff's appeal was mailed on or before February 20, 2003 suggests Plaintiff had sufficient funds in his account at that time, regardless of any alleged hold. (*Plaintiff's Complaint*, Exhibit 1, p. 4, 7). This is further confirmed by Plaintiff's account summary. On the day Plaintiff submitted his appeal for mailing he had $28.52 in his account. On February 11, 2003, $6.72 was taken from his account for copying fees, leaving a balance of $21.77 until February 20, 2003, when the court ordered payment was removed leaving a balance of $3.25. It necessarily follows Plaintiff's appeal had to have been mailed before that court ordered payment on February 20, 2003 and that Plaintiff had sufficient funds in his account at the time he submitted his appeal for mailing.

The Court is uncertain as to when Plaintiff's appeal was mailed to the Supreme Court; however, the above evidence suggests it was sent some time before the March 7, 2003 date asserted by Defendants. Defendants, nevertheless, have inexplicably failed to address this contradicting evidence which, although significantly lessens the duration of the alleged delay in sending Plaintiff's legal mail, also thoroughly undermines the reason offered for the delay. Defendants' silence on this glaringly obvious issue reveals a deficiency in their brief that warrants mention, at the very least.

In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any

inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus*, 915 F.2d at 229. That being said, the Court will infer from the above that Plaintiff's appeal was mailed after a point where the mail could have reached the Ohio Supreme Court by the February 17, 2003 deadline and before the date of the letter from the Ohio Supreme Court (February 25, 2003) and that at the time the legal mail was sent, Plaintiff had sufficient funds in his account to pay for the $3.85 postage, for the purposes of determining if summary judgment is appropriate.

### B. Plaintiff's 42 U.S.C. §1983 Claim

The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to adequate, effective, and meaningful access to the courts and prohibits prison officials from "actively interfering with inmates' attempts to prepare legal documents, or file them." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). A successful cause of action for interference with an inmate's constitutional right of access to court requires the inmate establish actual harm, *i.e.*, that his non-frivolous claim was frustrated or impeded. *Id.* at 351; *see also Brown v. Brown*, 46 Fed. Appx. 324, 326 (6th Cir. 2002) ("To demonstrate that the defendants' actions have impacted his access to the courts, [an inmate] must show that he suffered some actual prejudice in prosecuting litigation.") This requirement is only satisfied by specific types of impeded, non-frivolous claims, including direct appeals from convictions, petitions for habeas relief, and civil rights claims. *Lewis*, 518 U.S. at 354-55; *Smith v. Campbell*, 113 Fed. Appx. 85, 87 (6th Cir. 2004). An inmate also bears the burden of establishing the frustrated claim was non-frivolous as,

> Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value – arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing

at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions. *Lewis*, 518 U.S. at 353, n. 3; *see also Roberts v. Wingard*, No. 98-4265, 210 F.3d 372 (6th Cir. 2000) (Table) (only a prisoner who seeks to pursue an arguable claim has standing to bring a suit based on a denial of access to the courts).

Defendants assert Plaintiff cannot prove actual injury because his allegedly frustrated legal claim was a discretionary appeal to Ohio's Supreme Court and did not fall into one of the three categories listed in *Lewis*. The Court reluctantly agrees. Although it acknowledges the alleged failure on the part of Defendants to timely mail his appeal may have an indirect affect on any habeas petition he may attempt to file, it is undisputed the legal claim that was untimely mailed was a discretionary appeal to the Supreme Court of Ohio. Moreover, Plaintiff has not expressed any intent to file a habeas petition, nor has he indicated that a petition has already been filed, thus further supporting the conclusion he has failed to prove he suffered actual injury as set forth in *Lewis*.

Additionally, Plaintiff has not described his appeal, provided a basis for his appeal, or even attached a copy of the appeal to his complaint or his *Motion to Dismiss Defendants' Motion for Summary Judgment*. Needless to say, the content of Plaintiff's appeal is completely unknown to the Court, therefore rendering it impossible for the Court to determine if his claim was arguable. This fact, combined with the discretionary nature of his appeal, indicate Plaintiff cannot state a claim for denial of access to courts and, as such, Defendants are entitled to summary judgment regarding Plaintiff's §1983 claims.

### B. Plaintiff's State Law Claims

Generally, if federal question claims are dismissed prior to trial, state claims should be dismissed as well. *Mays v. Buckeye Rural Electric Cooperative, Inc.*, 277 F.3d 873, 881-882 (6th Cir. 2002);

*Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001). Dismissal of the state claims, however, is not mandatory in such situations as supplemental jurisdiction is a doctrine of discretion. *Harper v. Auto Alliance International, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). In determining whether to resolve pendent state claims on the merits, a court must give consideration to convenience, fairness and comity and balance the interests of judicial economy and avoidance of multiplicity of litigation against the interest of needlessly deciding state law issues. *Id.* at 211; *Blakely v. U.S.*, 276 F.3d 853, 863 (6th Cir. 2002).

In the present case, the court has found summary judgment is appropriate for Plaintiff's federal law claims, thus, should this Report and Recommendation be adopted, there will be no independent basis for federal subject-matter jurisdiction over this litigation. In considering the factors above, the Court finds dismissal without prejudice of Plaintiff's state law claims would be appropriate. Pursuant to 28 U.S.C. §1367(d), Plaintiff is free to bring his state law claims in state court up to one year following the district judge's eventual ruling on this Report and Recommendation, and thus is not without redress. *See also* Ohio Rev. Code §2305.19 ("In any action that is commenced ... if the plaintiff fails otherwise than upon the merits, the plaintiff ... may commence a new action within one year after ... the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.") Moreover, although the Court does not seek to measure the merits of Plaintiff's remaining state law claims, it does acknowledge that there are factual issues (as set forth above) concerning at least one of Plaintiff's claims that require further development that would best be served in state court. As such, the Magistrate Judge recommends Plaintiff's state law claims be dismissed without prejudice and *Defendants' Motion for Summary Judgment* regarding said claims be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends *Defendants' Motion for Summary Judgment* be GRANTED in part and DENIED in part and Plaintiff's 42 U.S.C. §1983 claims be dismissed with prejudice and Plaintiff's remaining state law claims be dismissed without prejudice.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: May 3, 2005

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).